IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GERALD L. ETTER, et al.            :            CIVIL ACTION
                                   :
            v.                     :
                                   :
PROMEDICA SENIOR CARE OF           :
PHILADELPHIA PA, LLC d/b/a         :            NO. 24-4213
PROMEDICA TOTAL REHAB +            :
(PHILADELPHIA), et al.             :

MEMORANDUM

Bartle, J.                                      May 28, 2026

        This is a medical malpractice action.  Plaintiff

Gerald L. Etter has sued ProMedica Senior Care of Philadelphia

PA, LLC d/b/a Promedica Total Rehab + ("Total Rehab"), a

licensed skilled nursing facility, as well as other defendants

for negligence and corporate negligence as a result of a hip

fracture plaintiff sustained while a patient at Total Rehab in

Philadelphia.  This action was originally filed in the Court of

Common Pleas of Philadelphia County and timely removed to this

court on the basis of diversity of citizenship.

        Before the court is the motion of defendants Total

Rehab, HCR III Healthcare, LLC, HCR Manor Care Service, LLC, and

ProMedica Health System, Inc. for summary judgment and the

motion of plaintiff for partial summary judgment under Rule 56

of the Federal Rules of Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  The court views the facts and draws all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

The underlying facts are straight forward.  Plaintiff, in his late eighties and suffering from dementia, was admitted on December 19, 2022 to Total Rehab in Philadelphia following hospitalization for COVID.  It is undisputed that plaintiff was, at various times while at Total Rehab, able to walk and move with assistance.  In the morning of December 22, 2022, while in bed, he complained to a staff member about pain in his left hip. He underwent an x-ray at Total Rehab at 10:30 p.m. that day. Shortly thereafter the x-ray revealed a left femoral neck fracture, that is a hip fracture.  The next morning, he was transferred to Thomas Jefferson University Hospital where, with the consent of his wife, he underwent successful surgery.  There was no eye-witness testimony as to how or when the hip fracture occurred at Total Rehab.  There is nothing in the record as to the circumstances other than a post-operative note by the surgeon that plaintiff "sustained a displaced femoral neck fracture as the result of an unwitnessed fall at a rehab facility."  The surgeon does not state from whom he obtained this information.  Plaintiff has not testified because of his dementia.

III

Plaintiff relies on the reports and testimony of his two liability experts: Christina Cawley, D.O. and Patrick

-3-

Stonich, a registered nurse.  Total Rehab argues that the reports and deposition testimony of these two experts are insufficient to establish negligence on its part.  It does not challenge their qualifications or the reliability of their methods.  Rather, it maintains that their testimony does not properly fit this case because the testimony is insufficient to establish plaintiff's claim of negligence.  See Fed. R. Evid. 702; In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742-43 (3d Cir. 1994).

Under Pennsylvania law, medical malpractice is the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services."  Toogood v. Rogal, 824 A.2d 1140, 1145 (Pa. 2003).[1]  A plaintiff bringing a medical malpractice claim must show that: (1) the physician owed a duty to the patient; (2) the physician breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the

---

1    In Toogood v. Rogal, there is no majority opinion.  The plurality opinion was written by Justice Newman and joined in by Justices Cappy and Eakin.  Chief Justice Zappala did not participate in deciding the case.  824 A.2d at 1151.  Justices Castille and Saylor concurred in the result but did not file a separate opinion.  Id.  While Justice Nigro filed a dissent, he only disagreed with the conclusion that plaintiff Toogood could not proceed in the absence of expert testimony.  He did not dispute the plurality's statement of the law.  See id. at 1151-53.

-4-

damages suffered were a direct result of the harm.  See Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997).  This standard is also applicable in medical malpractice suits brought against medical practitioners who are not physicians.  See Freed v. Geisinger Med. Ctr., 971 A.2d 1202, 1205-06 (Pa. 2009).  A corporation may be responsible for its agents' negligence under the theory of vicarious liability.  Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582, 597 (Pa. 2012).

Plaintiffs bringing a negligence claim "must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury" except where "the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons."  Toogood, 824 A.2d at 1145; see also Hightower-Warren, 698 A.2d at 54.  "[M]aking a mistake is not negligence as a matter of law."  Toogood, 824 A.2d at 1150; Williams v. Le Bar, 21 A. 525, 525 (Pa. 1891).

This is not a case where the lack of skill or care is so obvious that expert testimony is unnecessary.  At oral argument, plaintiff's counsel conceded that the res ipsa loquitur doctrine was not applicable here.  See Jones v. Harrisburg Polyclinic Hosp., 437 A.2d 1134, 1138 (Pa. 1981).  Dr. Cawley, a board-certified orthopedic surgeon, has opined on

behalf of the plaintiff, based on her review of plaintiff's medical records including x-rays, that plaintiff had an impacted femoral neck fracture, which is caused only by a force applied to the hip.  She has excluded a spontaneous fracture or a fragility fracture, which occurs as a result of a twisting motion or mechanism, such as rolling to one side in bed.  In her deposition, Dr. Cawley was asked and answered as follows:

> Q:   There were a number of different possibilities that you discussed, right, whether it was, perhaps another patient running into Mr. Etter with a wheelchair, Mr. Etter falling against a wall while urinating, falling from a standing height.  Can you tell me to a reasonable degree of medical certainty how it was that Mr. Etter fractured his hip?
>
> A:   "Based on available documentation, no."

While she concluded based on a reasonable degree of medical certainty that plaintiff suffered from an impacted fracture that was caused by force, she could not say what specific force had occurred to cause his injury as the type of force was not documented.  She could not testify that plaintiff had fallen from an upright position or that he had suffered from a blow of a different sort.  Her testimony falls short of connecting plaintiff's femoral neck fracture to any evidence so as to support a breach of duty by Total Rehab.

Nurse Stonich, a registered nurse and certified legal nurse consultant, reviewed plaintiff's records including his medical records, his care plan, and Total Rehab's roster and fall policy.  Nurse Stonich opined that Total Rehab failed to implement sufficient measures to prevent plaintiff from falling and failed to properly document and investigate the cause of the incident.  He concluded that the staff determined that plaintiff required assistance, and plaintiff's care plan required specific measures for safe transfers and to account for risk of falls. During his deposition, Nurse Stonich, going beyond what he had said in his report, specified that the care plan required that plaintiff be transferred to and from his bed using a gait belt but that there was no evidence that one was ever used.

Stonich opined that the defendants' actions deviated from standards set in "Federal Regulations related to Skilled Nursing Facilities" and by the American Nurses Association and Centers for Medicare and Medicaid, which he lists in his report. These standards state broadly that residents must be treated "with respect and dignity" and accurately assessed and cared for in a way that "promotes maintenance or enhancement of [their] quality of life."  The standards include provisions that facilities must have sufficient and competent nursing staff and policies that meet "standards of practice."  Nurse Stonich also pointed out various deviations found in plaintiff's medical

-7-

records, such as inconsistent notations of plaintiff's pain level and the unexplained delay in performing a diagnostic x-ray.  What he failed to do was tie his opinions to any facts in the record.  Like Dr. Cawley, he could not connect plaintiff's fracture to any actual acts or omissions by Total Rehab.

As stated earlier, there is a single reference in the plaintiff's medical records that plaintiff had fallen at Total Rehab.  On December 24, 2022, Dr. Erik Woelber, plaintiff's primary surgeon at Thomas Jefferson University Hospital, wrote in his post-operative notes that plaintiff "sustained a displaced femoral neck fracture as the result of an unwitnessed fall at a rehab facility."  Dr. Woelber did not say who reported this information.  The statement is especially questionable as the fall was "unwitnessed," and the plaintiff has dementia. Even assuming that the note is admissible evidence and that plaintiff experienced a fall, such a fact without more cannot establish negligence.  Total Rehab is not the guarantor of plaintiff's safety.  The applicable duties and standards of care depend on the underlying circumstances of plaintiff's fracture beyond the mere occurrence of a fall.  Plaintiff, it must be emphasized, does not rely on the res ipsa loquitur doctrine.  In short, plaintiff's experts have not identified any standards or duties binding Total Rehab to prevent all possible falls.

-8-

Plaintiff also posits in his supplemental opposition that the fall must have been witnessed by a Total Rehab employee, because there is no indication in plaintiff's medical record that he was able to "transfer and ambulate" without assistance.[2]  It is mere speculation that a Total Rehab employee witnessed but did not document a fall.  Even if plaintiff's fall was witnessed, plaintiff offers no evidence, expert or otherwise, of when or how the fall occurred.  A fall may have happened as a result of a mistake by a Total Rehab employee, but a mistake alone does not necessarily constitute negligence.  See Toogood, 824 A.2d at 1150; Williams, 21 A. at 525.  A factfinder would have to guess as to the circumstances of plaintiff's fall, the applicable standards and duties, and how Total Rehab deviated from acceptable standards.  A factfinder could not reasonably find for the plaintiff on the negligence counts based on the evidence in the record and the opinions of plaintiff's experts.

Additionally, plaintiff alleges that defendants HCR III Healthcare, LLC, HCR Manor Care Service, LLC, and ProMedica Health System, Inc. are vicariously liable for the negligence of their agents.  Plaintiff's experts offer no opinions as to them.

---

[2]   Defendants' expert opines that plaintiff suffered from a fragility fracture and that it did not result from a fall or trauma.

Thus, the court will grant summary judgment in favor not only of Total Rehab but also in favor of these defendants on plaintiff's negligence claims.

IV

Plaintiff also brings corporate negligence claims against all defendants. Defendants HCR III Healthcare, LLC, HCR Manor Care Service, LLC, and ProMedica Health System, Inc. (the "non-operator defendants") move for summary judgment on the ground that plaintiff's experts make no efforts to offer opinions concerning their corporate negligence. Defendant Total Rehab argues, as it did with plaintiff's negligence claims, that plaintiff's expert opinions are insufficient as a matter of law.

Corporate negligence is a theory of direct liability against a healthcare facility, which contemplates some form of "systemic negligence" by the hospital. Edwards v. Brandywine Hosp., 652 A.2d 1382, 1386-87 (Pa. Super. Ct. 1995); see also Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997). A hospital generally has the duty to: (1) use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) select and retain only competent physicians; (3) oversee all persons who practice medicine within its walls as to patient care; and (4) formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients. Thompson v. Nason Hosp., 591 A.2d 703, 707 (Pa. 1991). Even if they are not

hospitals, a nursing home or other healthcare facility may have such a relationship with a patient so that similar duties attach.  See Scampone, 57 A.3d at 602-07.  Corporate negligence is "based on the negligent acts of the institution" and "arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees." Welsh, 698 A.2d at 585.  Courts are required to assess the facts as they pertain to each individual defendant to "ensure[] that multiple entities are not exposed to liability for breach of the same non-delegable duties."  Scampone, 57 A.3d at 606-07.  The Pennsylvania Supreme Court has explained that "unless a hospital's negligence is obvious, a plaintiff must produce expert testimony to establish that the hospital deviated from an accepted standard of care and that the deviation was a substantial factor in causing the harm to the plaintiff." Welsh, 698 A.2d at 585.

There is no evidence, expert or otherwise, explaining how any of the defendants' actions or inactions were a substantial factor in causing plaintiff's injury or how the non-operator defendants were related to the plaintiff.  See id.; Scampone, 57 A.3d at 606-07.  Without such evidence, a reasonable jury could not find in favor of plaintiff on his corporate negligence claims against any of the defendants.

-12-

Accordingly, the motion of all defendants for summary judgment on plaintiff's corporate negligence claims will be granted.

V

Having resolved plaintiff's claims against the defendants, the court need not address the motion of plaintiff for partial summary judgment in which it sought to exclude defendant's expert.  It will be denied as moot.